No. 23,599.

WILBERT M. FERGUSON, *Appellant*, v. FRED NUTTLEMAN et al. (ROSE NUTTLEMAN and CARL BRANDT, *Appellees*.)

SYLLABUS BY THE COURT.

1. MORTGAGE ON HOMESTEAD—*Executed by Husband and Wife—No Fraud—No Duress*. A wife who can read and write, and who at the request of her husband signs with him a mortgage on their homestead but does not know that it is a mortgage and does not understand its nature or effect, cannot avoid the mortgage where no fraud has been practiced nor duress exercised on her to procure her signature thereto.

2. SAME—*Signed by Husband and Wife in Absence of Each Other—Mortgage Valid*. A mortgage on a homestead is not rendered invalid by the husband and wife signing it at different times in the absence of each other where one signs at the request of the other and the mortgage purports to be the joint act of both.

3. QUIETING TITLE—*Purchaser in Good Faith*. Title to real property may be quieted in one who, in good faith, acquires title thereto without notice of the rights of third parties, strangers to the title so far as the record thereof shows.

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion filed March 11, 1922. Affirmed in part and reversed in part.

*William Osmond, Elrick C. Cole*, and *T. B. Kelley*, all of Great Bend, for the appellant.

*R. C. Russell*, of Great Bend, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is an action to correct the description of real property described in a mortgage and to foreclose that mortgage. Judgment was rendered denying foreclosure and quieting title to part of the property in defendant Rose Nuttleman, and to the remainder of the property in defendant Carl Brandt. The plaintiff appeals.

For the purpose of this discussion, it is assumed that the property, at the time the mortgage was executed, was the homestead of Fred Nuttleman and Rose Nuttleman, although that fact is vigorously contested by the plaintiff. The court made extensive find-

ings of fact, all of which should be considered if it were necessary to discuss all the propositions presented by the plaintiff. The material findings of fact are as follows:

"The note and mortgage executed to the plaintiff by Fred Nuttleman bears date of May 25, 1914, that being the date when Fred Nuttleman executed the same and acknowledged the execution of the mortgage before John J. O'Keefe, a notary public of Jackson County, Missouri. But said note was never signed by the defendant Rose Nuttleman, and said mortgage was not signed by her until some time thereafter, the fact being that after he had executed the note and mortgage and acknowledged the execution of the mortgage he sent it to her by mail with request that she sign her name to it. She was then at Dallas, Texas, and unfamiliar with the purpose of the mortgage or with its binding force and effect, unfamiliar with the fact that its execution by her might tend to deprive her of her interest in her homestead, ignorant with respect to her rights thereunder, and unacquainted with and ignorant of any purpose upon the part of her husband to alienate and jeopardize their homestead at Great Bend, and without any purpose or intention upon her part to change her intention to return to Great Bend and establish her residence in the property in controversy; but still, so ignorant, she signed said mortgage at Dallas, Texas, and returned the same to her husband at Kansas City, Missouri; and she has never changed her intention to return to Great Bend or to relinquish her homestead rights in the property in controversy, unless her subsequent conduct constitute such change and bar her of her homestead interest in the property.

"That prior to the removal of Fred Nuttleman and wife from Great Bend to Dallas, Texas, he was indebted to his wife's father in the sum of $1,000, which said sum has never been paid by him. That some time during the year 1915, subsequent to the execution of the note and mortgage sued upon by him, he conveyed the property in controversy to his wife, and that some time after the conveyance to her, in order to satisfy her father's claim against her husband Fred Nuttleman, she conveyed to her father the defendant Carl Brandt by warranty deed lot 12 in block 32, Heizer Park Addition to Great Bend, being one of the lots in controversy in this action, and he is claiming title thereto by reason thereof."

The court made the following conclusions of law:

"The signing of the mortgage at the time and place and under the circumstances surrounding the signing of the mortgage by the defendant Rose Nuttleman, was not sufficient to constitute a joint consent between herself and her husband Fred Nuttleman in the alienation of her interest in the homestead, and she still retains her homestead interest in said property, unless she has lost the same by her subsequent conduct.

"From the facts as found, I conclude as a matter of law, that the mortgage sought to be foreclosed by the plaintiff is void, of no force and effect, and that foreclosure thereof cannot be had."

There was no evidence to show that any form of fraud or duress was practiced on Rose Nuttleman to secure her signature to the

mortgage. It appears that she could read and write and that the mortgage was recorded before the deed from her to her father was executed.

1. The controlling question in this case is: Do the facts found render the mortgage void? This question must be answered in the negative under the authority of *Roach v. Karr*, 18 Kan. 529, and *Buchanan v. Gibbs*, 26 Kan. 277. In *Roach v. Karr*, supra, this court said:

"Where a wife signed a mortgage-deed on a homestead, to secure a note executed by her and her husband, to take up a prior usurious note of a like amount secured on the same homestead, and the wife alleged in her answer that the mortgage was given without her consent, and the proof showed that the wife was illiterate and could only read a little by spelling the words, that the mortgage was not read to her, that she inquired of her husband as to its contents at the time of making her mark to the mortgage, and was told by him 'that it was none of her business, that it did not amount to a row of pins —that it was a note;' and that she signed the instrument believing it was a note; *held*, that if the wife was mistaken or deceived as to the contents of the said written instrument it was the result of her own gross negligence; that she should have demanded the paper to be read to her, and that if she relied upon the representations of her husband, it was at her peril alone; and that after the delivery of the mortgage to the mortgagee, who was innocent of any irregularity in the signing of the instrument, and who had no notice of the statements of the husband to the wife, and the surrender of the prior note to the husband, and the cancellation of the prior lien on the homestead, the wife could not assert, as against such innocent mortgagee, the defense that she never consented to the execution of the mortgage." (Syl. ¶ 3.)

In *Buchanan v. Gibbs*, supra, the following language was used:

"Where a party voluntarily signs and delivers an instrument affecting the property claims· of others, and thereafter seeks to repudiate such instrument on the ground of ignorance of its contents or imposition by a third party, the fact of such ignorance or imposition should be made to clearly appear before such instrument is declared invalid." (Syl.)

2. Rose Nuttleman and Carl Brandt urge that there was no joint consent in the execution of the mortgage. The mortgage, a copy of which was attached to the plaintiff's petition, on its face was the joint mortgage of Fred Nuttleman and Rose Nuttleman. It was signed by both of them; Fred Nuttleman signed it at one time; Rose Nuttleman signed it at another time; and each signed the mortgage in the absence of the other. Must a mortgage on a homestead be signed by the husband and wife at the same time and in the presence of each other where the mortgage purports to be the act of both? If this question is answered in the affirmative, many con-

Ferguson v. Nuttleman.

veyances and mortgages of homesteads in this state now supposed to be valid are invalid. No case has been cited by the appellees holding that such a manner of signing is necessary. The statute does not in terms require it, and no reason is apparent to show why it is necessary that it should be done that way.

Did Fred Nuttleman and Rose Nuttleman concurrently consent to the mortgage? Fred Nuttleman continuously consented to it from the time he signed it until it was delivered. He by letter requested his wife to sign it and she expressed her consent to it by signing it and returning it to him. There was thus the concurring consent of both. The mortgage was delivered by the husband under that joint or concurring consent. This contention of the appellees is untenable.

3. Judgment was rendered quieting title to lot twelve in Carl Brandt. He had pleaded ownership and had asked that his title be quieted. What effect does the reversal of the judgment as to Rose Nuttleman have on the rights of Carl Brandt? The deed to him was executed after the mortgage was recorded. There is nothing in the abstracts to show that, at the time the deed was made to him, he had any knowledge whatever of the mistake in the description in the mortgage. In the absence of evidence to show that fact, it must be presumed that he had no personal knowledge of the mistake. There was nothing of record to show that the plaintiff claimed any interest in lot twelve.

The judgment quieting title to that lot in Carl Brandt is affirmed.

The judgment as to Rose Nuttleman is reversed, and the cause as to her is remanded with direction to the trial court to render judgment foreclosing the mortgage on lots ten and eleven.