No. 31,643

J. E. LARRICK, *Appellant,* v. FRANK JACOBSON and LAURA JACOBSON, His Wife, *Appellees.*

(32 P. 2d 204.)

F. W. Mahin, of Smith Center, and H. McCaslin, of Osborne, for the appellant.

A. W. Relihan and T. D. Relihan, both of Smith Center, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action by the plaintiff to recover a personal judgment against the defendants, husband and wife, upon a note and to foreclose the mortgage securing the same.

The separate answers of the defendants admit the signing of the note and mortgage, but both of them allege they were signed through fraud and misrepresentations of the plaintiff, the answer of the wife especially alleging in detail that she was led to believe and did believe because of the acts, conduct and representations of the plaintiff that the mortgage she was signing was on a farm her husband was purchasing from his brother through the plaintiff, and was not a mortgage on their homestead. The reply to both answers was a general and a specific denial.

The trial court made findings of fact and conclusions of law and rendered judgment for plaintiff against defendants on the note, but declined to foreclose the mortgage, setting it aside as void and canceling it because it had not been executed by the joint consent of the defendants, which was necessary in a mortgage of a homestead. Plaintiff asked to set aside three of the findings of fact and one of the conclusions of law and asked for judgment for plaintiff on the remaining findings, and filed a motion for a new trial, all of which were overruled, from which adverse judgment and rulings the plaintiff appeals.

The first four findings state the facts as to the existence and description of the defendants' homestead of eighty acres and the negotiations of the husband to purchase the one-hundred-acre farm of his brother through the plaintiff, the managing officer of the local national bank, to which the brother was indebted for several hundred dollars. The remaining findings of fact and conclusions of law are as follows:

FINDINGS OF FACT

"5. Prior to November 26, 1930, the date of the note and mortgage sued on in this action, it was suggested to the defendant, Laura Jacobson, that a mortgage on the homestead of herself and her husband might be required to secure

the $2,000 balance to be paid on the William Jacobson land. This suggestion was made either by the plaintiff or the defendant, Frank Jacobson, to the defendant, Laura Jacobson, when all three were present. Laura Jacobson at this time told the plaintiff and the defendant, Frank Jacobson, that she would not sign a mortgage on the homestead for the balance of the purchase price on the William Jacobson land.

"6. On November 26, 1930, at the time the defendant, Laura Jacobson, signed the note and mortgage in question, she believed she was signing a mortgage on the William Jacobson land. She had never made or executed a mortgage or deed and was not familiar with the method of mortgaging or transferring the title of real estate, neither did she know the legal description of their homestead, and was unable to ascertain by the description of the land in the mortgage in question whether or not it was a description of the homestead of herself and her husband. That said mortgage was not read to the defendant, Laura Jacobson, and she did not read it herself, nor was she told by the plaintiff or the defendant, Frank Jacobson, that it was a mortgage on the homestead of herself and Frank Jacobson, and believing that it was a mortgage upon the William Jacobson land, she signed said mortgage to secure the note sued on in this action.

"7. That the mortgage in question in this suit was not executed with the joint consent of the defendants in this action.

"8. The court will make the additional finding that no fiduciary relationship has been established by the evidence in this case between the plaintiff and either of the defendants.

"9. On the question of fraud the court finds that none of the allegations or claims of fraud have been proven, except the fact that the plaintiff, at the time of the execution of the mortgage and note in question in this suit, intentionally did not disclose to the defendant, Laura Jacobson, the fact that the mortgage in question covered the homestead of the Jacobsons."

### CONCLUSIONS OF LAW

"1. Plaintiff is entitled to judgment upon the note sued upon in this action against each of the defendants for the sum of $2,454.30 with interest at 8 per cent and the costs of this action, and judgment is hereby entered against each defendant for said sum, and the costs of this action.

"2. That by reason of the fact that the mortgage in question was not jointly executed by the defendants herein, it is void, and foreclosure of the same is hereby denied."

The appellant complains that the question of the joint consent to the execution of the mortgage was not an issue in the case, and that there was no basis in the pleadings or procedure of the case on which finding No. 7 and conclusion No. 2 of the trial court could rest. In the answer of the defendant Laura Jacobson is the following sentence:

". . . that she never at any time knowingly executed a mortgage to the plaintiff or to any other person upon said homestead eighty described herein; . . ."

In the opening statement of the attorney for defendants occurs the following language: "I think the evidence will show that she never at any time consented to the alienation of her homestead, either in writing or orally . . ." and in the ruling of the trial court on the plaintiff's motion for judgment on the pleadings and the opening statement of counsel for defendants, we find the trial court used the following expression: "there is an issue of fact raised as to the question as to whether there was a joint alienation of the homestead. . . ." We think these three statements were sufficient to fully apprise the plaintiff that joint consent was an issue in the case and to justify such a finding thereon as the evidence would support.

It is the contention of the appellant that finding No. 9 is expressly a finding against any alleged fraud, because the intentional failure to disclose the nature and contents of the instrument to be signed could not constitute fraud, and that the second conclusion of law excludes fraud as any basis for such conclusion. To support this contention appellant cites among others the following Kansas cases: *Ferguson v. Nuttleman,* 110 Kan. 718, 205 Pac. 365; *Roach v. Karr,* 18 Kan. 529; *Elliott v. Faulkner,* 131 Kan. 528, 292 Pac. 918; *Moody v. Stubbs,* 94 Kan. 250, 146 Pac. 346; and *Mid-West Lumber Co. v. Wagner,* 133 Kan. 405, 300 Pac. 1067.

In the first case above cited the court found, among other things, that the mortgage was signed by the husband and wife at different places in the absence of each other and that the wife signed it at the request of the husband, that she was unfamiliar with the purpose, force and effect of the mortgage, and the fact that its execution might tend to deprive her of her interest in her homestead and was ignorant as to her rights thereunder and also of the purpose of her husband in alienating and jeopardizing their homestead in Kansas. The holding of this court under such circumstances is expressed in the first syllabus as follows:

"A wife who can read and write, and who at the request of her husband signs with him a mortgage on their homestead but does not know that it is a mortgage and does not understand its nature or effect, cannot avoid the mortgage where no fraud has been practiced nor duress exercised on her to procure her signature thereto." (*Ferguson v. Nuttleman,* supra.)

This in a measure answers a part of the contention of appellant that fraud and duress have no bearing on the matter of joint consent where the wife ignorantly signed the mortgage. The second syllabus holds such signing to be the joint act of husband and wife.

The second case above cited was where the wife could scarcely read any, and signed the mortgage by making her mark. The misrepresentations as to the nature of the instrument were made to her by her husband, and she relied upon them. The mortgage fell into the hands of innocent holders, and it was held that her defense could not be maintained against them and the mortgage was a valid instrument under such circumstances.

In the Elliott case, *supra*, a deed was held to be a mortgage executed by joint consent of husband and wife where, at the time of executing the same, they both agreed with the grantee therein that it was given him to enable him to become surety on a recognizance bond of the husband and to indemnify him against any loss or liability he might incur by reason of signing such bond or bonds.

In the Moody case, *supra*, the property belonged to the wife, and she and her husband executed a deed, and she delivered it to him to be delivered as security for a note executed by him to the grantee in the deed, but the husband, without her knowledge, delivered the deed under a different arrangement with the grantee. The deed was held to be a good mortgage on her property, which was a homestead, because she had intrusted her husband with the fully executed deed and had voluntarily made him her agent so that the grantee was justified in supposing the husband was authorized to deliver it in pursuance of the understanding between them.

The first syllabus in the Wagner case, *supra*, best states the facts as well as the law in another case where the reason for the wife's claim of no joint consent was because of the acts of the husband. It is as follows:

"A mortgage on a homestead is not rendered invalid by the fact that the wife signed it some days after the husband did, and by the fact that the wife stated that she was not signing of her own free will and accord, where there is a finding of the trial court supported by evidence that there was no coercion and the wife signed at the request of the husband and the mortgage purports to be the joint act of both." (*Mid-West Lumber Co. v. Wagner,* supra.)

The situation has always been differently regarded where the misrepresentation or concealment has been on the part of the grantee. This rule is announced in the case of *Warden v. Reser,* 38 Kan. 86, 16 Pac. 60, as follows:

"The signature and acknowledgment of the wife to a mortgage of the homestead, procured by the person for whose benefit the same was executed, and who was the notary before whom the mortgage was acknowledged, and who

as the owner and holder thereof is trying to foreclose it, by the representation that it was a chattel mortgage on the stock of her husband, in renewal of a preëxisting one that she had signed, is absolutely void, because not obtained by the voluntary consent of the wife; notwithstanding the fact that she did not attempt to read, or have some one else read the same, she being solely induced to sign by such misrepresentation." (Syl. ¶ 3.)

In the early case of *Bird v. Logan*, 35 Kan. 228, 10 Pac. 564, after stating in the first syllabus the facts as to the misrepresentations made to the wife by the agent of the grantee, whereby she was induced to execute a bond for the conveyance of their homestead after it had been executed by her husband, it was held:

"Assuming that the husband was properly informed concerning all these matters, . . . there was no sufficient 'joint consent' on the part of the husband and wife to the alienation of their homestead, and no sufficient equitable grounds for the specific enforcement of their contract, as will authorize an action in equity on the part of the obligee against the obligors for the specific enforcement of the contract; and further *held,* that the action cannot be maintained, whether the husband was properly informed or not." (Syl. ¶ 1. See *Nathoo v. Jones,* 111 Kan. 406, 207 Pac. 645.)

Intentional concealment of a matter that should be spoken may be fraudulent. It was said in *Nairn v. Ewalt,* 51 Kan. 355, 32 Pac. 1110, that—

"Misrepresentation may consist as well in the concealment of what is true as in the assertion of what is false." (Syl. ¶ 2.)

In the case of *Bank v. Bay,* 90 Kan. 506, 135 Pac. 584, it was said:

"Broadly speaking, all conduct may be said to be fraudulent which results in unconscientious advantage over, or injury to another . . ." (p. 508.)

Under these authorities we cannot concur with appellant in his contention that his intentional concealment of the fact that the mortgage the wife was asked to sign was on her homestead instead of on the land her husband was purchasing could not constitute fraud, neither do we think the language of the second conclusion of law necessarily limits it to the question of joint consent, as stated in finding No. 7, to the exclusion of the element of fraud stated in finding No. 9. Under the findings the matter is not limited to the question of ignorance of the wife or her failure to read and investigate the matter for herself, as in some of the cases cited, nor can the wife claim any protection on account of fiduciary relationship, but we must not forget that while she should have dealt with the plaintiff at arm's length, we have to appraise the rights of the plaintiff in getting the execution of this instrument by her in the light of the findings

that he intentionally concealed from her something she should by all means have been told, especially after she had told him, as stated in finding No. 5, that she would not sign a mortgage on the homestead, and the further facts, as found in findings Nos. 1 and 2, that the owner of the land being purchased was indebted in the sum of several hundred dollars to the bank of which the plaintiff was at that time the general manager.

Appellant assigns error in the findings Nos. 5, 6 and 7 for the reason that they were unsupported by the evidence and were immaterial to the decision of the action. The evidence was very conflicting, but it was the duty of the trial court to determine which of two conflicting statements was most entitled to credit. The trial court has done so in making these findings, and we find there is in the record ample evidence to support the findings, if that evidence is given credit.

Other errors assigned were the failure of the trial court to set aside these special findings, Nos. 5, 6 and 7, and render judgment for plaintiff on the remaining findings. We find no error in the overruling of these motions. These findings were material under the pleadings, and, as before stated, they were supported by sufficient evidence, and judgment should not have been rendered upon the remaining findings without regard to these. Neither do we find error in overruling plaintiff's motion to set aside conclusion of law No. 2 or his motion for a new trial.

Defendants have served notice of a cross appeal, and complain of the error of the trial court in refusing to grant them a trial by jury. Appellant suggests that their notice of cross appeal was not served within six months after the date of the judgment or the rendering of the adverse ruling of which they complain. The taking of a cross appeal is not under the provisions of the same statute as that limiting the time for serving notice of appeal by appellant, but is under R. S. 60-3314, which requires such notice to be served upon the appellant at any time before the case is assigned for hearing in the appellate court. It was said in *Bolinger v. Giles,* 125 Kan. 53, 262 Pac. 1022:

"Under our simplified practice a cross appeal may be taken quite informally—by notice to the adverse party any time before the cause is assigned for review (R. S. 60-3314), and the questions sought to be reviewed may be presented with other matters discussed in the briefs." (p. 57.)

And this was quoted with approval with other authorities in the

recent case of *Knox v. El Dorado National Bank,* 137 Kan. 500, 21 P. 2d 353.

The right to a trial by jury is based upon the liability of the defendants, particularly the husband, upon the note on which this action was brought because of the allegations of fraud contained in the answer. The first part of R. S. 60-2903 is as follows:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived or a reference be ordered as hereinafter provided."

It was said in *Boam v. Cohen,* 94 Kan. 42, 145 Pac. 559—

"The court must determine whether or not a case shall be tried by a jury from the pleading. . . ." (Syl. ¶ 3.)

The same view was approved and developed in *Estey v. Holdren,* 126 Kan. 385, 267 Pac. 1098.

Neither the abstract nor the counter abstract furnish us with a full and complete copy of either of the separate answers filed in this case, but portions given contain allegations of fraud practiced by the plaintiff, not only with respect to obtaining the note, but more especially with respect to the obtaining of the signature of the wife to the mortgage. Likewise the opening statement of defendants' counsel, the evidence and the findings of the trial court are almost exclusively directed to the question of joint consent and the concealment from the wife of the fact that the mortgage she was asked to sign covered her homestead.

The trial court had the pleadings before it, and from what is before us of the pleadings we can see no error, as it appears here to have been mainly a question of foreclosing a mortgage on a homestead, which is unquestionably a matter for the court only. (*Morgan v. Field,* 35 Kan. 162, 10 Pac. 448; and *Weir v. McVey,* 130 Kan. 743, 288 Pac. 766.)

It was said in *Maclellan v. Seim,* 57 Kan. 471, 46 Pac. 959:

"While in a cause of an equitable character neither party can demand a jury as a matter of right, and usually the better practice is for the court to try it alone, yet the court may in its discretion order any issue or issues of fact to be tried by a jury, and error will not lie unless for an abuse of such discretion." (Syl. ¶ 1.)

If the note had in any way been separable from the claim of lien on the land the rule might have been different.

The case of *Fisher v. Rakestraw et al.,* 117 Kan. 441, 232 Pac. 605,

involved a contract for the exchange of land for a stock of hardware, and the issues framed required an accounting and determination of a set-off, and it was held:

". . . that the action being essentially one for equitable relief, a jury trial was not demandable as a matter of right, notwithstanding the facts pleaded by defendant to support his set-off and counterclaim, if involved in an ordinary action at law, might have been justiciable before a jury as a matter of right." (Syl. ¶ 2. See, also, *Union State Bank v. Chapman,* 124 Kan. 315, 259 Pac. 681; and *Dodd v. Boles,* 137 Kan. 600, 21 P. 2d 364.)

The judgment is affirmed.